## Bond *versus* Bunting.

1. To perfect a gift, the delivery must be according to the nature of the thing, an actual delivery, so far as the subject is capable of it, and be the true and effectual way of obtaining the command and dominion of the subject.

2. If the thing be not capable of actual delivery, there must be some act equivalent to it; the owner must part both with the possession and dominion of the property.

3. If the thing be a chose in action, an assignment or some equivalent instrument must be actually executed.

4. Wherever a party has power to do a thing and means to do it, the instrument he employs shall be so construed as to give effect to his intention.

5. The provisions of the Married Woman's Act, April 11th 1848, are confined to powers given to her husband to sell and dispose of her real and personal property.

6. A wife may assign her choses in action, her husband joining, without acknowledgment of any kind.

7. Haffey *v.* Carey, 23 P. F. Smith 431, followed. Kennedy *v.* Ware, 1 Barr 445; Licey *v.* Licey, 7 Id. 251, compared.

March 30th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* No. 136, to July Term 1873.

This proceeding was commenced August 27th 1872, in an action of assumpsit, by Martha W. Bond against the Mutual Benefit Life Insurance Company, on a policy of insurance, not under seal, dated January 26th 1870, issued by the defendants to Mrs. Bond, the plaintiff; the insurance was for $10,000, on the life of her husband, John R. Bond, payable to her in ninety days, after due notice to the defendants of the death of the husband.

On the 28th of December 1871, a paper was executed, purporting to be under the hands and seals of John R. Bond and Martha W. Bond, assigning to Henry B. Bunting in trust for "James H. Bond and Jane S. Bond, children of the said John R. Bond (the amount of the policy), over the sum of $5600, which the said Martha W. Bond reserves for herself and for her own use, and subject to the payment pro rata of the funeral expenses," &c. The signature of John R. Bond was by his mark.

James H. Bond died on the day after the execution of this assignment.

The policy remained in the possession of Mrs. Bond.

On the 5th of January 1872, notice of the assignment with a copy of it was served on the insurance company.

On the 24th of the same month, Mrs. Bond furnished the company proof of her husband's death, and stated to them that she had been informed that a portion of the insurance money was claimed by an alleged assignment from her; she notified the company not to pay to any one but herself.

On the petition of the company, a rule was granted for the parties in interest to interplead, and the court directed the com-

[Bond v. Bunting.]

pany to pay the insurance money into court. The court awarded the issue between Henry B. Bunting, trustee of James H. Bond, and Jane S. Bond, as plaintiff, and Martha W. Bond, defendant.

The questions in the issue were:—

1. Whether a paper, purporting to be an assignment of a portion of the policy of insurance on which the above suit has been brought, dated December 28th 1871, and to be signed by John R. Bond by making his mark thereto, was in fact so signed by him.

2. Whether, if so signed, the said John R. Bond so signed the same under the pressure of undue influence.

3. Whether, if so signed, the said John R. Bond, at the time of so signing, had sufficient mental capacity to understand the nature and consequences of the act of signing.

4. Whether Martha W. Bond, at the time of signing the same, had sufficient mental capacity to understand the nature and consequences of the act of signing.

5. Whether Martha W. Bond signed the same under the pressure of undue influence.

6. Whether there was any consideration for an assignment of any portion of said policy.

7. Whether there has been any assent by the Mutual Benefit Life Insurance Company to any assignment of any portion of said policy.

The issue was tried May 28th 1873, before Lynd, J.

A large amount of testimony was heard on the questions, whether the husband had in fact signed the assignment; if so, whether he and his wife had sufficient understanding when they signed, and whether they signed it under the pressure of undue influence.

The first five issues were found for the plaintiff in the issue; the sixth and seventh were found for the defendant; the jury, as to the sixth, finding also that the consideration moving from John R. Bond was affection for his children, and that Mrs. Bond, the defendant, received no pecuniary consideration.

The plaintiff moved for judgment on all the issues.

The District Court entered judgment for the plaintiff, Hare, P. J., delivering the opinion as follows:—

"This case originated in the following circumstances: in the year 1870, Mrs. Martha Bond insured the life of her husband, John R. Bond, for the sum of $10,000, in the Mutual Benefit Life Insurance Company of New Jersey. She subsequently joined him in executing an instrument under seal, by which the amount insured above the sum of $5000, was assigned and set over to one Henry Bunting, in trust for her husband's children, who are alleged to be the offspring of a former marriage. This was not the conduct of a stepmother; but when her husband's influence was removed by death, she challenged the right of the trustee to

[Bond *v.* Bunting.]

the fund. The money was paid into court, and an issue framed and submitted to a jury, who found that the only consideration for the transfer was the affection which John R. Bond bore to his children. It is proper to add, that the trustees had notice of the assignment—a circumstance which might be material in England, but seems to be of no moment in Pennsylvania. We have now to determine the validity of the assignment, with the aid of the light derived from this verdict.

"It is obvious, from what has been said, that the case involves two inquiries. Is a voluntary assignment of a chose in action, which does not pass the legal title, effectual as an equitable transfer? Can a married woman dispose of her personal property, without a separate acknowledgment?

"Those who are conversant with such studies, know that the former question has been the subject of a protracted controversy, which is not yet terminated. It was long held, that where an assignment without a valuable consideration was legally inoperative, it could not be upheld in equity : Kennedy *v.* Ware, 1 Barr 445. The presence of a seal made no difference in the application of the principle : Ellison *v.* Ellison, 6 Vesey 658; Ward *v.* Audland, 8 Beavan 20. If the instrument was so worded as to confer a right of action in debt or covenant, the plaintiff would not be restrained by an injunction. If it was not, the want of a legal remedy did not afford a ground for equitable relief. In either case, the chancellor suffered the law to take its course.

"The rule, as stated by Lord Eldon, in Ellison *v.* Ellison, is, 'that if you want the assistance of the court to constitute you *cestui que trust*, and the instrument is voluntary, you shall not have that assistance for the purpose of constituting you *cestui que trust*, as, upon a covenant to transfer stock, &c., if it rests in covenant, and is purely voluntary, this court will not execute that voluntary covenant. But if the party has completely transferred stock, &c., though it is voluntary, yet the legal conveyance being effectually made, the equitable interest will be enforced by this court.' A grant which fails of effect at law, is a covenant in the sense of this distinction. In Ward *v.* Audland, Lord Langdale said : 'If the property was legally vested in the plaintiff, he might have recovered it at law, and applied it on the trusts; if the property was not legally and effectually vested in the plaintiff, then, as the deed was voluntary, this court could afford no assistance to the plaintiff in recovering it; and, under these circumstances, the only question between the parties is, what is the legal effect of the assignment? * * * The debt and policy of assurance are choses in action not assignable at law, and it is plain that the whole estate and interest of the assignor did not and could not pass to an assignee; and I apprehend that, in the case of a voluntary deed, neither the assignor nor his executor could have been compelled to

[Bond *v.* Bunting.]

permit the assignee to use his name for the recovery of the debt.' So in Meek *v.* Kettlewell, 1 Hare 474, the vice chancellor was clearly of opinion, that an assignment under seal of that which did not pass at law by the operation of the assignment itself, unaccompanied by other acts, was no better than a covenant or agreement to assign. It was by treating a deed which failed of effect as a covenant, that chancery was enabled to give relief through a decree for specific performance: Chew *v.* Barnet, 11 S. & R. 389; Bayler *v.* The Commonwealth, 4 Wright 37. Hence it followed, that where the grantor received no consideration, and the obligation was merely gratuitous, the grantee was left to find such remedy as he could at law.

"This course of decision seems to have been well founded in the peculiar doctrines of equity and the relation which they bore to the common law. It can hardly be vindicated on the broad principles of jurisprudence. It is a general rule, that he who owns, shall have the power to dispose. The *jus disponendi* should not be withheld except for some sufficient cause, and on special grounds. What, if anything, the grantor receives as an equivalent, concerns him, and not society at large. The right to give is consequently as clearly incident to the right of property as the right to sell. Choses in action are as much within the scope of this principle as lands or chattels; and yet, as they cannot be legally assigned, the refusal of equity to aid voluntary transfers rendered it impossible to give a chose in action. The effect was to impose an arbitrary restraint on alienation, which was not unfrequently attended with injurious consequences. A large amount of property is locked up at the present day, in bonds, stocks, and other evidences of debt. A capitalist might count his wealth in these by thousands, and yet find it difficult to provide for a friend or relative. It was easy to give a house or chattel, but if he attempted to bestow a debt, there was an unexpected obstacle. A demand might be sold, or pledged, or released, but it could not be the subject of a voluntary transfer. If the donor was versed in the law, he might obviate the difficulty by collecting the money, and investing it in the name of the beneficiary. But this required time and more knowledge than is ordinarily possessed. It was, moreover, *impracticable* where, as in the case of a policy of insurance, the debt was payable at a future day and contingent.

"The evil was so obvious, that there was a constant effort to escape from it. A chose in action could not be assigned without a valuable consideration, but where a trust exists, it may be enforced, though in favor of a volunteer. Hence an inference, that where a man declared that he held assets which belonged to him in trust for a volunteer, it was a valid gift. If, said Lord Cranworth, 'I say expressly or impliedly that I constitute myself a trustee of personalty, that is a trust executed and capable of being enforced

[Bond *v.* Bunting.]

without consideration;' and the doctrine was applied in numerous instances to choses in action.

"It is not easy to find any sufficient ground for this distinction.

"It was established, at an early period, that the transfer of the legal title, in trust, for a third person, would vest the beneficial interest in the latter. Such was the origin of uses, and, subsequently, of trusts. A declaration of trust, under these circumstances, substantiates the existence of a duty which would be obligatory, independently of the declaration. But it does not follow that an admission can give rise to a fiduciary obligation where none exists. 'The ordinary power of a chancellor,' said Gibson, C. J., in Read *v.* Robinson, 6 W. & S. 329, 'extends no further than the execution of a trust sufficiently framed to put the title out of the grantor, or to the execution of an agreement for a trust founded on a valuable consideration,' and the language of the same judge, in Morrison *v.* Beirer, 2 W. & S. 86, shows that he regarded a declaration of trust as inoperative where it does not rest on an antecedent obligation.

"In this uncertainty we may revert to principles. A declaration of trust by the owner of property in favor of a volunteer, has no peculiar efficacy. It is simply a gift, which derives its force from the will of the donor. As applied to land, it is, consequently, invalid, if not under seal; and perhaps even then, unless the estate lies in grant. Where the law prescribes the mode of conveyance, it must be followed. When, however, there are no legal means of transfer, any words expressing an intention to confer a present interest, may be effectual in equity. There can be no clearer manifestation of a design to part with the right of property in favor of another, than an absolute assignment to him or for his use. The notion that a gift, which would be valid if made through a declaration of trust, will fail if put in the form of an assignment, was accordingly repudiated in Richardson *v.* Richardson, Law Rep. 3 Eq. 686.

"The question was, whether the beneficial interest in certain promissory notes passed by a voluntary assignment of all the donor's personal estate. She did not endorse the notes, and the legal title consequently remained in her. The chancellor said that it was impossible to contend, after the decision in Kekewich *v.* Manning, 1 De Gex, Mac. & G. 176, that the beneficial interest did not pass by the assignment, because 'the decision in that case was not merely that a person who, being entitled to a reversionary interest or to stock standing in another's name, assigns it by a voluntary deed, thereby passes, notwithstanding that he does not, in formal terms, declare himself to be a trustee of the property; but it amounts to this, that an instrument executed as a present and complete assignment, is equivalent to a declaration of trust.'

"Here, as in Kekewich *v.* Manning, the instrument was under

[Bond *v.* Bunting.]

seal, but the *ratio decidendi* was broad enough to include an assignment by parol. Accordingly where the donor signed and delivered the following memorandum to his physician: 'I hereby give and make over to Dr. Morris an India bond, number D. 506, value 1000*l.*, as some token for his kind attention to me during illness;' Lord Romilly said, 'the writing is equivalent to a declaration of trust. If the donor had said: "I undertake to hold the bond for you," that would have been a declaration of trust, though there had been no delivery. This amounts to the same thing, and Dr. Morris is entitled to the bond:' Morgan *v.* Millison, Law Rep. 10 Eq. 475.

"The decisions have advanced, step by step, to this conclusion, which is now established in England. The case of Kennedy *v.* Ware may be thought to indicate that it does not prevail in Pennsylvania. I have endeavored to show that the English authorities, on which Chief Justice Gibson relied, have been overruled. If this were a court of error, our course would be clear. As a tribunal of the first instance, we ought to adhere implicitly to the rulings of the court above. If the case of Kennedy *v.* Ware were identical with this, it would control our judgment. The assignment there was by parol. Here it is under seal. The difference seems to be immaterial, according to the authorities, but it affords room for a doubt. There is another consideration. The fund is given in trust for Jane and James S. Bond. They are described in the instrument as the children of John R. Bond. If they are also Mrs. Bond's, there is a meritorious consideration arising from a-tie of blood. It seems that equity will give effect to a provision for a wife or child, though not for a collateral relation: see Hayes *v.* Kershaw, 1 Sandford Ch. 258; Buford *v.* McKee, 1 Dana 107; Dennison *v.* Goehring, 7 Barr 175; Kennedy *v.* Ware, 1 Id. 445. It was alleged during the argument that these were Bond's children by a former wife, but this does not appear of record. On the whole, we deem ourselves entitled to uphold the assignment.

"The other branch of the case is hardly less obscure. At common law a married woman had no power to dispose of her personal estate. The right of alienation belonged to her husband, and could only be exercised by her as his agent. The act of 1848 provides, that the property of a *feme covert* shall not be sold, mortgaged or transferred, or in any manner encumbered by her husband, without her written consent first had and obtained before one of the judges of the Court of Common Pleas of this Commonwealth. Whoever drafted this act seems to have forgotten that disabling the husband does not enable the wife. The act forbids him to transfer without her written consent, &c., but it provides no means by which she can alienate. The result was a painful uncertainty, which the lapse of twenty-five years, and an exhaustive

[Bond *v.* Bunting.]

judicial investigation, have not removed.   In Moore *v.* Cornell, 18 P. F. Smith 320, Sharswood, J., said that the great object of the statute was to secure the property of a married woman against her husband and his creditors.   It did not confer upon her any power or capacity which she did not possess before, except that of making a will, and of binding her estate by a contract for necessaries.   It had accordingly been held, in Stoops *v.* Blackford, that an assignment of a mortgage by a married woman is invalid, unless her husband joins in the instrument, and it is authenticated by her separate acknowledgment.   It was said, in the course of the same opinion, that a mortgage, though in form a conveyance of land, is substantially a security for a debt.   It is personal property—a chose in action—and whatever gives the money secured by the mortgage, will carry the security along with it.

" It might be inferred from this language, that the transfer of a wife's personal property requires not only the concurrence of her husband, but an acknowledgment in accordance with the Act of 1848, as modified by that of April 9th 1849.

" Such a rule would render it impracticable for a married woman to dispose of her stocks and furniture, or even to make the smallest present, without calling in a justice of the peace or notary public.   Nay, more, the restriction would extend to purchases, because it is impossible to buy without giving an equivalent.   It has not been imposed in terms, and we may believe that the court above will do some gentle violence to the Act of 1848, rather than adopt a conclusion fraught with injurious consequences.   The judge who delivered the opinion in Moore *v.* Cornell, has shown in other instances, with his wonted clearness, that if a mortgagee is a creditor, he is something more.   He is an owner, who may enter and take rents and profits, until the debt is satisfied.   Hence, a transfer of his interest may be acknowledged and recorded; a mode of authentication which would be inappropriate in the case of a chose in action.   The result is, that according to the best consideration that we have been able to give to the subject, the trustee is entitled to the fund transferred by the assignment."

The defendant, Mrs. Bond, took a writ of error; she assigned for error:—

6. Not entering judgment for the defendant.

7. Deciding that the partial assignment of the policy of insurance by John R. Bond and Martha, his wife, without the separate acknowledgment of the wife under the Act of 1848, was sufficient to pass her interest in the said policy to the extent of the assignment.

8. Deciding that the assignment created a valid and binding trust in Henry B. Bunting as trustee, enforcable against the said Martha W. Bond.

9. Deciding that the assignment, though without valuable con-

[Bond v. Bunting.]

sideration, was sufficient to bar the right of the said Martha W. Bond to the portion of the said policy intended to be transferred by the said assignment.

*C. H. Gross* (with whom was *T. J. Barger*), for plaintiff in error. —The Married Woman's Act of April 11th 1848, Pamph. L. 536, 2 Br. Purd. 1005 *et seq.*, does not change the common law so as to enable her to convey or contract in regard to her property as a *feme sole:* Petit *v.* Fretz, 9 Casey 119; Bear *v.* Bear, Id. 525; Peck *v.* Ward, 6 Harris 506; Ulp *v.* Campbell, 7 Id. 361; Thorndell *v.* Morrison, 1 Casey 326; Glidden *v.* Strupler, 2 P. F. Smith 400; Graham *v.* Long, 15 Id. 383. The contracts and bonds of a married woman are absolutely void: Caldwell *v.* Walters, 6 Harris 82; Glyde *v.* Keister, 8 Casey 85; Keen *v.* Coleman, 3 Wright 299; Keiper *v.* Helfricker, 6 Id. 325; Steinman *v.* Ewing, 7 Id. 63. A mortgage of wife's property to secure the husband's debt, to be properly acknowledged, must be according to the provisions of the Act of 1848: Black *v.* Galway, 12 Harris 18; Lytle's Appeal, 12 Casey 131. So, of assignments of mortgage by married women: Stoops *v.* Blackford, 3 Casey 213; Moore *v.* Cornell, 18 P. F. Smith 320; Jamison *v.* Jamison, 3 Whart. 457. There having been no valuable consideration for the assignment of a portion of the policy, the assignment was but an imperfect gift, and no perfect trust was created, such as equity will enforce at the suit of a volunteer: Antrobus *v.* Smith, 12 Vesey 39; Edwards *v.* Jones, 1 Myl. & Cr. 226; Dillon *v.* Coppin, 4 Id. 647; Searle *v.* Law, 15 Sim. 95; Ward *v.* Audland, 8 Beav. 201; Beatson *v.* Beatson, 12 Sim. 291; Meek *v.* Kettlewell, 1 Hare 464; Kennedy *v.* Ware, 1 Barr 445; Jeffreys *v.* Jeffreys, Cr. & Ph. 138; Campbell's Estate, 7 Barr 100. Partial assignment of a debt will not bind the debtor either in equity or law, nor deprive him of the right to pay the whole to the assignor after notice that part has been transferred to the assignee: Robbins *v.* Bacon, 3 Greenl. 346; Palmer *v.* Merrill, 6 Cush. 282; Hopkins *v.* Beebe, 2 Casey 85, 88; Gibson *v.* Finley, 4 Md. Ch. 75.

*T. J. Diehl*, for, defendant in error.—The acknowledgment required by the Act of 1848, applies only to property (evidently real estate) sold, conveyed, mortgaged or transferred, or in any manner encumbered *by her husband*, and does not apply to her gift, assignment or other disposition of her personal property by an instrument in which he joins: Persch *v.* Quiggle, 7 P. F. Smith 257; Selden *v.* The Merchants' National Bank of Meadville, 19 Id. 424; Hinney *v.* Phillips, 14 Wright 386; Haffey *v.* Carey, 23 P. F. Smith 431.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 10th 1875.

[Bond *v.* Bunting.]

The verdict of the jury on the questions submitted to them in the feigned issue, leaves nothing to be reviewed but the points discussed in the able opinion of the learned president of the court on the motion for judgment.

It is not easy to reconcile Kennedy *v.* Ware, 1 Barr 445, with the subsequent case of Licey *v.* Licey, 7 Barr 251, in which it was held that delivery of a bond to a stranger passed the right to the debt as a gift. Chief Justice Gibson is reported in the latter case to have remarked, when Kennedy *v.* Ware was cited, " there is a distinction between a gift and an assignment; the latter is only available in equity and will only be enforced so far as there is a consideration." But is not a gift an assignment, perfected by a delivery which debars the donor from revocation, and must not the donee of a bond so given sue upon it in the name of the donor? So he admitted when he came to pronounce the judgment. " Such a gift would be inoperative at law, for as a bond is not negotiable the legal title would pass only by an observance of the formalities prescribed by the statute; but on the principle of Cross *v.* Powel, and the authorities already quoted, it would pass the equitable ownership." That principle, as the chief justice states it, was that if a bond delivered to the obligor to be cancelled, but not cancelled, come again to the hands of the obligee, though valid at law, the obligor will be relieved in equity. His other authorities abundantly show that a bond delivered to be cancelled without consideration, and actually cancelled, is at an end both in law and equity. But all this serves to confirm the doctrine enunciated by Chancellor Kent, in regard to the delivery necessary to perfect a gift. " Delivery in this, as in every other case, must be according to the nature of the thing. It must be an actual delivery so far as the subject is capable of delivery. It must be *secundum subjectam materiam,* and be the true and effectual way of obtaining the command and dominion of the subject. If the thing be not capable of actual delivery, there must be some act equivalent to it. The donor must part not only with the possession, but with the dominion of the property. If the thing given be a chose in action, the law requires an assignment or some equivalent instrument, and the transfer must be actually executed:" 2 Kent Com. 439. To hold otherwise would be in effect to decide that the owner of a chose in action not evidenced by a note, bond or other instrument, could not make a gift of it, which would be an unreasonable limitation of his right of property. There was a very good reason in the case before us for the non-delivery of the policy, because, being for $10,000, the donor retained the sum of $5600, and the whole was to be subject to the payment pro rata of the funeral and other expenses incurred in the last illness of John R. Bond. Taking the instrument to be not an assignment, but a covenant to allow the covenantee to use

[Bond *v.* Bunting.]

the name of the covenantor to recover the money for the use declared, the seal at law imported a consideration.

There is, then, a distinction between this case and Kennedy *v.* Ware, which was the case of a parol assignment of a judgment without a delivery or anything which the law holds equivalent to it.

It is certainly the tendency of all the modern authorities to maintain the general doctrine which may indeed be stated as a formula, that wherever a party has the power to do a thing (statute provisions being out of the way), and means to do it, the instrument he employs shall be so construed as to give effect to his intention. It is but the application of the old maxim, *interpretatio chartarum benigne facienda est ut res magis valeat quam pereat— quando res non valet ut ago valeat quantum valere potest.* It cannot be doubted that Mr. and Mrs. Bond could by a declaration under seal have constituted themselves trustees for the purpose set forth in the statement, and why, if it cannot for want of consideration operate as a good equitable assignment, may it not be effectual as declaration of trust? The later English authorities certainly sustain the learned president below in his opinion upon this point, and they have been recognised in this court in a recent judgment, though the case was not one which justified their application: Helfenstein's Estate, 27 P. F. Smith 328.

The remaining question presents no serious difficulty. The provisions of the Married Woman's Act requiring an acknowledgment by the wife, is confined by its terms to powers given by her to her husband to sell and dispose of her property, real or personal: Haffey *v.* Carey, 23 P. F. Smith 431, and cases there cited. It follows that she may assign her choses in action, her husband joining in the act of disposition, without acknowledgment of any kind; nor is any change made by the Act of May 14th 1864 (Pamph. L. 158), which was evidently only intended to quiet a doubt upon the subject. The assignment of a mortgage stands upon a different footing. It is not a mere chose in action, but also a conveyance of the real estate. The mortgagee is a purchaser within the statute of Elizabeth, and the recording acts apply to him. Judgment affirmed.