## Savidge *v.* Metropolitan Life Insurance Company, Appellant.

Argued November 18, 1954. Before STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Owen B. Rhoads,* with him *Gordon W. Gerber, Barnes, Dechert, Price, Myers & Rhoads* and *Joseph Howland Collins,* General Counsel, for appellant.

*James H. McHale,* with him *Richard J. Raab,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 3, 1955:

The question involved is whether or not, under the facts of this case, a life insurance company established that it had paid the proceeds of life insurance policies to the named beneficiary. The court below ruled that it did not and directed the jury to render a verdict in favor of the beneficiary. The insurance company appeals from the refusal of the court to enter judgment for it *non obstante veredicto.*

Plaintiff, Cora V. Savidge, is the widow of the insured, Joseph W. Savidge. She was named as the beneficiary in four life insurance policies of the defendant, Metropolitan Life Insurance Company, insuring the life of plaintiff's deceased husband. The sum payable upon the said policies aggregated $8,704.44.

In a suit in assumpsit instituted by plaintiff against defendant on April 6, 1953, she averred that the insured died May 6, 1951; that defendant did not pay plaintiff the amount of such policies which it had covenanted to pay upon the death of insured. Defendant answered that it had paid plaintiff and exhibited checks and endorsements thereon indicating payment. The issue being thus framed, the case came on for trial before a jury. Formal proof of the existence of the insurance contract and defendant's liability thereunder were fixed by the pleadings, concerning which there is no dispute. The single question is whether defendant proved facts which established legal payment by defendant.

Plaintiff testified that the insured died May 6, 1951. On the following day she delivered the policies and executed proofs of death to one Arthur Benson, a trusted friend of the family, who had represented himself to be a lawyer. She further testified that "[She]

asked [Benson] to deliver [the policies and proofs of death] to the company". But plaintiff also testified, in answer to a query by the court: "Q. Do I understand you to say you gave these four policies to Mr. Benson? A. Yes. Q. Together with this proof of death? A. Yes. Q. And that shortly after that Benson reported that he had collected the money? A. Yes. He told me he put it in savings and loans. Q. But he said he collected the money from the Metropolitan Life Insurance Company? A. Yes."

She further testified: "By The Court: Q. What authority did you give Mr. Benson? A. Well, he being my lawyer, naturally, I turned the things over to him. Q. Did you authorize him to collect the insurance for you? A. I didn't authorize him, no, but when I asked him about it he said, 'I have already gotten it and put it in saving funds.' So, of course, I didn't distrust him. So, I thought he did." Plaintiff admitted that she did nothing and made no claim against defendant for a period of seventeen or eighteen months after she had turned the policies and proofs of death over to Benson, and that he had told her that he had collected the funds and deposited them to the credit of the estate. The learned trial judge accurately stated in his charge to the jury: ". . . she ascertained the fact that checks of the defendant insurance company had been deposited in an account in her name in the Bryn Mawr Trust Company. Of course, the plain inference from this testimony, members of the jury, is that Arthur Benson procured these checks, opened an account in the name of Mrs. Savidge, and probably in some manner not disclosed by the evidence, withdrew the amount in the account." The judge thereupon *directed the jury to return a verdict for plaintiff* for the full amount of the claim with interest. His assigned reason was: ". . . the obligation of the defendant insurance company in this

case was not only to see that the checks were issued to Mrs. Savidge, but to see that payment was made according to the tenor of the checks. It is my conclusion that that was not shown in this case, and I, therefore, direct you to return a verdict in favor of the plaintiff and against the defendant in the amount of the claim, . . ." With this we do not agree.

Since plaintiff employed an agent to deliver the policies with proofs of death to defendant, and since she ratified the act of collecting the proceeds, she cannot impose liability on the insurer to pay her a second time. Payment to an authorized agent is payment to the principal. Improper payment to an agent may be later affirmed by the principal with the same effect as if the act had been originally authorized by him: Restatement, Agency, §82 (1933). An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it: Restatement, Agency, §94 (1933). Comment b to that section reads: "Acquiescence may be inferred from silence, even though the purported agent was theretofore a stranger to the purported principal. Nevertheless, the latter's silence is usually more significant where an agency relationship already exists and the agent in the particular case has exceeded his powers. If such an agent reports the matter to the principal at a time or in a manner calculated to call for dissent if the principal were unwilling to affirm, the latter's failure to dissent, if unexplained, furnishes sufficient evidence of affirmance." See *Porter v. Patterson*, 15 Pa. 229; *The Philadelphia, Wilmington, and Baltimore Railroad Company v. Cowell*, 28 Pa. 329; *Thomas v. Employers Liability Assurance Corp.*, 288 Pa. 325, 135 A. 614.

The evidence shows that the plaintiff knew that Benson had collected the proceeds of the insurance. One month after delivering the policies to Benson for

collection he informed her, upon inquiry, that he had collected the monies and deposited them in an account at a Federal Savings and Loan Association in the name of the estate of her deceased husband. Authorization to collect is necessarily *inferred* from her inquiry concerning her agent's disposition of the proceeds. There is no evidence that plaintiff objected, remonstrated or demanded that the funds be paid over to her even though she knew they belonged to her, nor did she ever question Benson as to how he had come into possession of the money. Yet, with this knowledge, she did not communicate to the defendant the fact that she had not received the proceeds for a period of seventeen or eighteen months. Thus, even if there were no original authorization to collect the insurance, the affirmance of the collection may be inferred from the plaintiff's failure to dissent once she knew that the defendant had paid out the proceeds. With this affirmative evidence of plaintiff's acquiescence on the record, there is no necessity to inquire into the authenticity of the signatures on the insurance checks or how Benson obtained the money from the bank account at the Bryn Mawr Trust Company. Those are matters to be settled between Benson, the Bryn Mawr Trust Company and the plaintiff. The fact remains that as between this plaintiff and this defendant all obligations and duties have been performed.

The reason assigned by the court for its action in directing a verdict in favor of the plaintiff is: ". . . a verdict was directed by the trial judge in favor of plaintiff, on the ground that defendant had not met its burden of producing sufficient evidence from which the jury could find or infer that plaintiff had been paid the insurance proceeds by defendant; and that, therefore there was no factual issue to submit to the jury."

Under the well established principle of *Nanty-Glo Boro. v. American Surety Company*, 309 Pa. 236, 163 A. 523, it is error for the court to direct a verdict for the *plaintiff* where the claim rests upon oral testimony. The testimony should have been submitted to the jury under proper instructions. But insofar as the *defendant* is concerned, the court may accept everything the plaintiff says as true, and declare, as *matter of law*, that the defendant has legally made payment. Under the facts of this case, as matter of law, payment by the defendant was established.

A somewhat similar situation arose in *Zidek v. West Penn Power Company*, 145 Pa. Superior Ct. 103, 20 A. 2d 810, where an attorney, without authority, signed his client's name to a release and the settlement draft and absconded with the cash. There the court held that the plaintiff was bound by the act of her attorney and could not recover from the debtor tortfeasor. Judge KENWORTHEY, speaking for a unanimous court, said (p. 107) : "The plaintiff further contends that even if she were to concede that the attorney had authority to collect payment, he was limited to accepting it in cash and he certainly had no authority to sign her name to the check. But the answer to both these suggestions is the same: The attorney actually received cash. The manner in which he received it is of no consequence in this proceeding. Accepting her position as valid, for the moment, she has authorized her agent to accept cash. Defendant has paid it to him by a draft ultimately converted into cash. This made the embezzlement a matter between the plaintiff and her agent only. . . ." In a subsequent action against the bank which cashed the check, recovery was permitted against it by this same plaintiff: *Zidek v. Forbes National Bank*, 159 Pa. Superior Ct. 442, 48 A. 2d 103.

Defendant met its initial burden of going forward with the evidence when it proved that these checks had been paid out of its bank accounts; that the checks referred on their face to the insurance contracts in question, and that the funds had been credited to an account in the name of Cora V. Savidge at the Bryn Mawr Trust Company. On cross-examination testimony was elicited from plaintiff that she knew the insurance money had been collected. The introduction of the checks into evidence presented an even stronger factual presumption of payment than was the case in *Schmidt v. Paul,* 377 Pa. 377, 105 A. 2d 118. It was there held that where circumstances are shown which establish a factual presumption of payment, the burden of going forward with the evidence is cast upon the party asserting nonpayment. This burden the plaintiff in the present case did not meet or assume.

Since the plaintiff, under the above noted principles of agency, ratified Benson's act of collection of the insurance proceeds this ratification logically included the power to credit or deposit same to an account in plaintiff's name. Thus the plaintiff was paid as far as defendant was concerned. The depository, the Bryn Mawr Trust Company, then became plaintiff's agent for collection and upon collection assumed the role defendant formerly occupied—that of plaintiff's debtor. The statutes and authorities are clear to the effect that the bank is the debtor of the designated principal and not of the depositor where such an item is so deposited. The applicable statute is the Act of June 12, 1931, P. L. 568, sec. 4, which provides: "An indorsement of an item by the payee or other depositor 'for deposit' shall be deemed a restrictive indorsement and indicate that the indorsee bank is an agent for collection and not owner of the item." The same result is reached under the Uniform Commercial Code—

Bank Deposits and Collections: Act of April 6, 1953, P. L. 3, sec. 4-201, 12A PS 4-201, which became effective July 1, 1954 and repealed the Act of 1931, supra. In Michie on *Banks and Banking* (Perm. Ed.), Vol. 5A, it is stated, at p. 62: ". . . if indorsement of payee's name to a check is restricted 'for deposit', payee's bank is authorized to deposit it to his credit, it being immaterial who signed the indorsement. . . ." And, at p. 216, it is also stated: ". . . where one person deposits money in a bank to another's credit, the bank is the debtor of the designated principal, and not of the depositor. . . ." The payee was well identified on the face of the three checks as Cora V. Savidge and the beneficiary of the four designated life insurance policies, the numbers of which appeared on the face of the checks.

In its answer to plaintiff's complaint, defendant pleaded payment. Since this defense was not pleaded under the heading of *new matter*, it has been argued that a verdict could have been directed against defendant on the pleadings. But plaintiff raised no objection to the form of defendant's answer. Any objection thereto must, therefore, be considered as waived. The issue was clear. To amend the answer would be a mere formality: *Bacon v. Newtown Friends' School*, 77 D. &. C. 324, 332; *Festa v. Shuman Bros., Inc.*, 87 D. & C. 152.

Judgment reversed and here entered for defendant *non obstante veredicto*.