Provident Trust Company of Philadelphia *v.* Interboro Bank and Trust Company, Appellant.

Argued June 5, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Sidney L. Wickenhaver,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* for appellant.

*Herbert A. Barton,* with him *Robert W. Beatty* and *Swartz, Campbell & Henry,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1957:

On June 28, 1951, Arthur Benson obtained from Mrs. Cora V. Savidge, whom he had known for 25 years, a power of attorney to sell her Lansdowne property, manage the business of her deceased husband, invest funds, negotiate loans and accomplish other business matters not necessary to relate here. On July 6, 1951, he endorsed Mrs. Savidge's name without her knowledge to a judgment note and borrowed $6000 on it from the Interboro Bank & Trust Company. With this money he opened an account in that bank in her name. He then withdrew from the account $5049.63.

A week later he attended the settlement closing the sale of Mrs. Savidge's Lansdowne property at the office of the Commonwealth Title Company, which turned over to him its check payable to Mrs. Savidge in the amount of $9,300.32 due her as grantor. The check was drawn on the Provident Trust Company of Philadelphia, the plaintiff in this lawsuit. Benson endorsed (again without her knowledge) the name of Mrs. Savidge to this check and deposited it in the account he had opened in her name in the Interboro Bank. The Interboro Bank negotiated, transferred, and delivered the check to the Federal Reserve Bank of Philadelphia which delivered it to the Provident Trust Company and received from the Provident Trust the amount of the check which the Reserve Bank then turned over to Interboro. Provident then charged the account of Commonwealth Title with the amount of the check.

When Benson deposited the $9300 check in the Interboro Bank on August 1, 1951, Mrs. Savidge's account at that time was already overdrawn in the amount of $35.12. With the depositing of the $9300, Interboro collected the $6,000 it had loaned to Benson on the assumption it was going to Mrs. Savidge. By the end of August, 1951, the entire amount deposited by Benson had been withdrawn, save $33.17.

It was not until April, 1952, that Mrs. Savidge became aware of Benson's duplicities and illegal transactions. In that month Benson began serving a prison sentence for an unrelated Federal offense. Mrs. Savidge now employed counsel to represent her and she learned, inter alia, of the existence of the account in her name in Interboro, of the $6,000 and $9,300 deposits made in her name, and the ensuing withdrawals. She brought suit against the Commonwealth Title Company for the proceeds from the sale of her property, asserting that the Title Company had no authority to pay to Benson

the money due her. The Title Company settled this lawsuit upon payment of $7500 to Mrs. Savidge who then assigned to the Title Company all her rights to proceeds in the Lansdowne property transaction as well as her rights to the $9300 check issued by the Title Company. The Title Company reassigned these rights to the Provident Trust Company which, in its dual position as assignee of Mrs. Savidge's rights, and as drawee bank, brought suit against the Interboro Bank for the amount it had paid to the Federal Reserve Bank, it having reimbursed its depositor's (Title Company) account for the amount charged against it.

Upon filing of Answer, the case was heard by the Court of Common Pleas of Delaware County without jury and verdict was rendered in favor of the plaintiff in the sum of $11,981.82. The defendant appealed.

It is the position of the plaintiff, Provident Trust, that the Interboro Bank, as the collecting bank, which, by its endorsement guaranteed all prior endorsements, was liable to Provident for the $9300 paid by Provident. This position is a sound one. We said in the case of *Land Title Bank & Trust Company v. Cheltenham National Bank*, 362 Pa. 30: "The applicable rule of law is so firmly settled that it needs no elaborate citation of authorities to support it. If a check is made payable to the order of a person named therein the absolute duty of a bank honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the genuineness of the endorsement at its peril. Section 23 of the Negotiable Instruments Law of 1901, P. L. 194, provides that 'When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge

therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.' And the Act of April 5, 1849, P. L. 424, section 10, which Act was not repealed by the Negotiable Instruments Law (Union National Bank v. Franklin National Bank, 249 Pa. 375, 94 A. 1085; Market Street Title and Trust Co. v. Chelten Trust Co., 296 Pa. 230, 145 A. 848), provides that, where the signature of an indorser on a check is forged and the amount by reason thereof is erroneously paid, the payer shall be legally entitled to recover from the person previously holding or negotiating the same the amount so paid, together with interest thereon from the time that demand shall have been made for repayment."

On the other hand, it is the position of Interboro that it has no liability in the matter because (1) Mrs. Savidge's signature on the check was not a forgery; (2) that, under the authority of the power of attorney which she gave to Benson he had the right to sign her name; and that (3) she subsequently ratified his actions. We affirm what the lower Court said with regard to these first two propositions:

"We feel that Benson was not 'in fact' authorized to indorse this check. The Power of Attorney authorized Benson 'to deposit such funds in my account at the Bryn Mawr Trust Company or such other accounts as may be standing in my name.' The Power contains two other references to Mrs. Savidge's account in the Bryn Mawr Trust Company. Under the Power of Attorney, there is no authority in Benson to open new accounts in the name of Cora V. Savidge. Benson's entire dealings with the account of Cora V. Savidge in the defendant bank evidences the intention to conceal this account from Mrs. Savidge by the use of addresses for

her to insure that she would receive no bank statements or other information pertaining to the account. There was no authority to deposit this check in a spurious account founded on the forged signatures of Mrs. Savidge.

"The protective cloak of Section 4 of the Uniform Fiduciaries Act of May 31, 1923, P. L. 468 (20 PS 3352) is only available to the defendant bank as a defense if the negotiable instrument 'is indorsed by a fiduciary empowered to indorse such instrument on behalf of his principal.' Benson was not in fact authorized or empowered to indorse the check and deposit it in defendant's bank. Authority to collect does not carry with it the authority to indorse. Paton's Digest of Legal Opinions, Vol. 2, page 2077; 94 ALR 562. In Byrne v. Dennis, 303 Pa. 72, at page 78, the court said 'authority to receive the check from the association was not authority to indorse it; nor would the above mentioned acts give such agent authority to indorse appellant's name on the check, present it to the bank for payment, and receive the money.' "

On the point of ratification the Interboro argues that since Mrs. Savidge knew that the money had been collected, she had to know that Benson had negotiated the check, which could only have been done by endorsement. But it was not established that Mrs. Savidge was aware of all the relevant circumstances, and it is only in such a situation that ratification results. Interboro believes that our decision in the case of *Savidge v. Metropolitan Life Insurance Company*, 380 Pa. 205, substantiates its contention that Mrs. Savidge ratified Benson's actions. In the *Metropolitan Life Insurance Company* case Mrs. Savidge had sued the insurance company for proceeds of insurance policies which had been turned over by it to Benson. We there held that Mrs. Savidge was charged with ratification because

after learning that the insurance company had paid out benefits under the policies she did not, for 17 or 18 months, take any action to disavow Benson's collections. Though that decision may have been relevant if we were considering here a suit against the Commonwealth Title Company, it cannot control the rights of Mrs. Savidge against the Interboro Bank which are vested in plaintiff trust company through assignment and cannot control the rights of the plaintiff company as drawee bank. We very clearly pointed this out in the *Metropolitan Life Insurance Co.* case, supra, as follows: ". . . there is no necessity to inquire into the authenticity of the signatures on the insurance checks or how Benson obtained the money from the bank account at the Bryn Mawr Trust Company. Those are matters to be settled between Benson, the Bryn Mawr Trust Company and the plaintiff."

Finally, Interboro contends that in any event the plaintiff's recovery must be limited to $7500, the amount of the loss actually sustained by the plaintiff's depositor, Commonwealth Title. But it is to be remembered that the Provident Trust Company, in addition to suing the drawee bank, is suing also as the assignee of the rights possessed by Mrs. Savidge to recover the $9300 withdrawn from her account in Interboro without her authority. In *Coffin v. Fidelity-Philadelphia Trust Co.,* 374 Pa. 378, we said: "The basic principle of law relied on by the plaintiffs is not disputed by the defendant bank, namely, that a bank by accepting a deposit guarantees that it will not pay the depositor's money except (1) to the depositor or (2) to the payee named by the depositor in checks drawn on the bank or (3) to the person who by reason of a valid endorsement from the payee becomes entitled to such payment. This undertaking by the bank is contractual in nature, the relationship of depositor to bank

being that of creditor and debtor, and the liability of the bank in the event of a breach of its guarantee is absolute; '. . . no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the genuineness of the endorsement at its peril.' ".

In the instant case, Mrs. Savidge testified that the withdrawals were not made with her authority nor made in her behalf. This was not contradicted by the defendant. The defendant argues that the plaintiff did not proceed on the theory of an assignee as well as drawee, but a reading of the Amended Complaint makes it clear that the Provident proceeded on both bases, and in paragraph 7 makes specific complaint with regard to the unauthorized payment of the proceeds of the check deposited with the defendant company. The fact that the Commonwealth Title paid only $7500 for its assignment does not estop the assignee from collecting the full amount of the claim assigned. The Superior Court well said in this respect, in the case of *Ertel v. McCloskey*, 167 Pa. Superior Ct. 120: "Nor was the defense (lack of consideration) available to McCloskey (the debtor). The debtor may not question the motive or purpose underlying the assignment, or set up lack of consideration as a defense. 6 C.J.S., Assignments, §132. Since a chose in action may be the subject of a gift, Licey v. Licey, 7 Pa. 251, no consideration is necessary to the validity of an assignment. Bond v. Bunting, 78 Pa. 210."

Judgment affirmed.

Mr. Justice Bell would limit recovery to $7,500 with interest.