## ZANES v. LEHIGH VALLEY TRANSIT CO.

### No. 14884.

District Court, E. D. Pennsylvania.

June 5, 1930.

George R. Booth, of Bethlehem, Pa., and Arthur V. McDermott, of New York City, for plaintiff.

Reuben J. Butz and Thos. J. Perkins, both of Allentown, Pa., for defendant.

DICKINSON, District Judge.

An opinion was filed in this cause but no judgment entered. This opinion was based upon a misunderstanding of a feature of the fact situation and is withdrawn. One fact, to wit, the ownership of the plaintiff of the bonds, which the defendant is asked to be found to have agreed to pay, is averred and denied in the pleadings. This presents an issue of fact which would prevent judgment. The denial, however, would seem to be no more than formal and is one which is promised no support in the evidence at the trial. As there is no other fact in controversy, the trial without this issue would result in a directed verdict. The pleadings are not in formal accord with the Pennsylvania practice, the case being presented upon petition and answer. The parties have, however, stipulated that the denial mentioned be withdrawn and the cause submitted upon the facts, an outline statement of which we give. This in effect makes of the question before us a demurrer question. These facts are:

1. A railway corporation, with the usual franchises and a constructed railway, made a corporate mortgage in the usual form to secure an issue of bonds, some of which are held and owned by the plaintiff.

2. A lease for 999 years of all the franchises and property of the mortgagor, consisting of the mortgaged premises, was then entered into with covenants, all of which it is stipulated may be considered by the court as pleaded.

3. The indorsement upon each bond of the promise of the lessee to pay the same.

4. A conveyance following a judicial sale of all the franchises and property of said lessee, including the aforesaid leasehold estate in the said mortgaged premises.

5. The incorporation of the defendant and the transfer to it of all which the above lessee corporation had owned, again includ-

ing the leasehold interest in the first-mentioned mortgaged premises.

6. The entering into the possession and enjoyment by the defendant of the mortgaged and leased premises and its performance of all the current covenants of the lease as successor of said lessee.

7. The maturing of the bonds secured by the mortgage, the demand for payment of those held by the plaintiff, and the bringing of this suit by an individual bondholder against the defendant to enforce the obligation which is averred to have been assumed by it.

The defense is a denial of such liability.

### Discussion.

The case illustrates the truth that it is usually more difficult to formulate the question to be answered than to answer it when framed. The case fairly bristles with suggested questions for discussion. Any question which can be framed as the decisive question which the case presents changes while you are looking at it like the color groupings in a kaleidoscope. The following is, however, our attempt at an analysis:

We begin with the admission that if the suit were one against the lessee it must prevail. In fairness to counsel for defendant, this admission is perhaps with a qualification later discussed. The liability here sought to be enforced, if any, is that of the successor of a lessee and assignee of the leasehold interest to perform the covenants of the lease imposed by the lease upon him as the price of his enjoyment of the leasehold estate. As a starting general proposition, one is bound to perform his own covenants but not those of another. The first and broad question thus becomes whether the assignee of a leasehold can be bound to perform the covenants of the lease. There is again the admission that he may be, but the answer to the question in any given case is dependent upon the nature of the covenants, the duty of performance of which is sought to be imposed upon him.

This takes us to the covenants of this lease. We can avoid confusion of thought and retain a firmer grasp of the real question presented if we focus our attention upon its broad features, ignoring, for the moment, its details. The whole interest of the lessor corporation and its stockholders in the mortgaged property was subordinated to the mortgage. Unless the mortgage was taken care of they would receive nothing. The dependence of the mortgage bondholders was upon the mortgaged property being faithfully devoted to the payment of the bonds. The attempt was here made to assure this payment by making each succeeding tenant in the control of the property responsible for the bonds. The lessee thus agreed to pay the bonds. More, however, was required. The lease was for 999 years and the bonds 30-year bonds. The control of the property might pass into other hands before the bonds were paid and would almost certainly do so before the term ended. It thus became of the first importance to impose, if this could be done, a like responsibility upon each successive owner of the leasehold estate.

Without taking the time and space needed to quote the language of the covenants by which this was sought to be done, it is sufficient to say that if it was possible to impose upon any successor of the lessee the obligation to pay the bonds held by the plaintiff, this lease does it, because each successive owner of the leasehold estate is attempted to be made as fully bound to make the payment as if it had itself made the covenant.

This narrows but lengthens the inquiry before us into whether such successor is bound to make this payment, and if so, why, and if not, why not.

 It may be of some help to remark that corporate mortgages illustrate the distinction, for some reason, made between corporate and other ownerships of anything. A corporation without owning an inch of land, or anything else for that matter, except the franchise to do something, may make an issue of bonds and execute a pledge of what it has in the form of a mortgage to secure the payment of the bonds, and thereupon such pledge is clothed with all the incidents of and treated as if it were a veritable mortgage of land. This is the common accepted concept of all corporate so called mortgages. We will not stop to inquire what sanction the law gives to such concept, because here the corporation mortgagor was a railway company having an interest or estate in land. The thought of contract is that of an obligation enforceable by law to do something. The obligation may be directly assumed by the contractor, or it may be one imposed upon him. The latter obligation may arise in one of two ways. Conduct may bespeak a contract as loudly as words. One may so act as that what he does is consistent only with the thought that he has promised to do something else. Such a promise is said to be implied and is imputed to him, although he has not directly nor in terms made it. The obligation of a contract may again be imposed by law in pursuance

of some policy of its own with which the willingness of the party bound has nothing to do. In either case the promise is a fiction. The law finds and enforces the obligation; the reference to the law of contracts is no more than a convenient analogue. The law, however, deals with contracts, sometimes in a positive and sometimes in a negative way. It may impose the obligation of a contract when none has in real fact been made; it may likewise negative and declare null all legal obligation when what would otherwise be an express contract has been made. The different viewpoints of the parties may be presented in a paraphrase of the lease. One viewpoint is that the lessee covenanted to pay these bonds, and to indorse such agreement upon each bond, and that a further covenant of the lease was that any one who succeeded to the ownership of the leasehold would assume these covenants as fully as if the succeeding tenant had himself made them. When, therefore, the defendant took over the mortgaged property, it impliedly agreed to pay these bonds. The other viewpoint is that the law imposes no obligation upon a succeeding tenant to perform the covenants of the lease other than such as "run with the land," and that these run with the land only until the covenant is performed or broken, and that the obligation which the lessee here assumed was to indorse upon each bond its agreement to pay it, which indorsement the lessee made. The agreement to pay the mortgage bonds having nothing to do with the tenancy, and having been made by the lessee in performance of its covenant so to do, no enforceable promise of the defendant to pay the bonds can be imputed to it.

■ It may be profitable from this point on to follow the very clearly thought out and expressed argument of defendant's counsel. The proposition must be admitted that a covenant to pay an incumbrance (unless the payment was as rent) is not a covenant running with the land, such as the law imputes to an alienee. It must not be overlooked, however, that this proposition deals with a covenant which the law imputes to a tenant, and not one which he has assumed. The whole doctrine is, moreover, one of land law and has been taken into the law in furtherance of its policy to unfetter estates and to promote freedom of alienation. It is akin to the doctrine of perpetuities and many other doctrines of the law. They are intended to enforce a policy. Such estates and such only as the law permits may be created in land. The power of an owner to carve out new estates

or give to them novel incidents is very much restricted.

We repeat, however, that the question here is not what covenants the law imputes to a succeeding tenant or how far interference with the free alienation of land may be permitted, but the other question of whether this defendant has itself contracted, and, if so, will the contract be enforced by law.

The case cited to us of Masury v. Southworth, 9 Ohio St. 341, presents the problem which the defendant must face. If the covenant does not express any obligation of the successor, then the successor is not bound by it unless the covenant is one which the law imposes; if the covenant does express the obligation of the succeeding tenant, then he escapes it only in those cases in which the law does not sanction such a covenant. The case is authority for the doctrine that no matter how clear the intention of grantor and grantee may be that the title to the land be tied up to the performance of a covenant, there are instances in which such an incumbrance will not be permitted but an alienee will take the land freed of the covenant.

In the case before us there is the clearest purpose to have every successive possessor of the leasehold under obligation to take care of the bonds. The sole question thus becomes whether the law relieves the tenant of the obligation which has been assumed.

Not having access to the report of this Ohio case, we do not know whether it differs from the Pennsylvania cases which determine the question of the obligation of the alienee by the intent of the grantor and grantee as expressed in the deed interpreted in the light of the situation of the parties and the subject of the grant. De Sanno v. Earle, 273 Pa. 265, 117 A. 200.

■ The logic of his argument which counsel for defendant accepts without hesitation is that no language, however clear, will impose such an obligation as is here upon a succeeding tenant. The doctrine referred to is, of course, confined to covenants other than those which the law imposes upon succeeding tenants because they are "covenants running with the land." The question from the viewpoint of the defendant thus again becomes, not whether the lease imposes the obligation upon the tenant, but whether the law imputes it to him without a contract. Aside from statutes of fraud or other control of the forms of contracts, we see no difference in the obligation or binding force of contracts, whether they be express or implied.

■ We find to be the law of Pennsylvania that even in land transfers an alienee of the grant may be made liable to the payment of an incumbrance by being held to have assumed it by appropriate words in the grant. The doctrine that under the law of Pennsylvania a succeeding tenant cannot be made answerable for such contracts is not accepted. It was even thought that the mere words under and subject made the grantee assume the debt, and the Act of 1878 (Act Pa. June 12, 1878, P. L. 205 [Pa. St. 1920, §§ 18854, 18855]) was passed to deny this.

■ The second point made, as we interpret it, is that there is no covenant imposing an obligation upon the tenant to pay the bonds at maturity, but only the covenant by the lessee to agree to make itself responsible for their payment by an indorsement upon each bond. We do not so read the lease. There is, it is true, a covenant by the lessee to indorse upon each bond (as was done) such an agreement, but this was not in relief or in discharge of the covenant of the lease that each succeeding tenant should be responsible for the payment. We agree that if this successive liability was intended it would be expressed, but we think it has been expressed in the clearest possible language. The indorsement of the bonds simultaneously with the execution of the lease was in no way inconsistent with the obligation of a succeeding tenant nor a substitute therefor.

In view of the fact situation confronting the parties, we do not attach the importance which counsel for defendant over and again emphasize of the omission of any requirement for the consent of the lessor to any assignment of the lease, nor do we agree that a covenant to pay the bonds could be enforced only by such consent requirement. The term was 999 years, and of course a succession of tenants was contemplated. A consent requirement was sure to become impracticable, and hence there was a strengthened, not a lessened, reason for succeeding tenants assuming the payment of the bonds. The point made really comes back to the point before made, because to make the second point the defendant is forced to construe the provision of the lease that all its covenants are assumed by each succeeding tenant to mean, in defendant's own language, "of course * * * only covenants running with the land since no others would bind the assignees of the lessee," no matter how clearly it was expressed "that they should be bound."

The final stand of the defendant upon the proposition that there is no such privity of contract as to enable the plaintiff to recover in a suit in his own name is taken upon the doctrine of Greene County v. Southern Surety Co., 292 Pa. 304, 141 A. 27. The ruling there was made solely in deference to the early Pennsylvania cases. It is clear that the case is not authority for any extension of the doctrine announced. The distinction made between actions in debt or covenant and actions of assumpsit applies only in Pennsylvania and is an outgrowth of the peculiarity of the Pennsylvania judicial system, in that, having no courts of equity, equitable doctrines were applied in actions of assumpsit and the phrase came into use that "every action in assumpsit is a Bill in Equity." The teaching of the Greene County Case is that this doctrine applied only to actions which were in strictness assumpsit.

The facts of the present case are that the promise here was not one made to another, but was made to each bondholder, so that the doctrine of the Greene County Case does not apply and the promise is open only to other possible defenses which might be suggested. Into these, however, we do not go because they are not urged. There are likewise other possible obstacles to a recovery by the plaintiff which, for the same reason, we do not discuss.

Aside from all the legal questions which may be raised, there is this practical situation presented: The mortgagor corporation was under a legal obligation to pay these bonds. Presumedly it had at the time of the making of the lease sufficient assets, including its railway and the franchise to operate it, to meet this obligation. Everything which it had passed to the lessee. Lessor and lessee had thus a like interest in assuring the payment of the bonds. All which the lessor had or what was left of it passed to the defendant.

If the logic of the argument is to be followed that the only obligation of the defendant is to perform the covenants of the lease which run "with the land," then the only recourse of the bondholders is to the land interest pledged by the mortgage. There was, however, a contract between the lessor and lessee. The defendant has succeeded to all the benefits of the contract of the lessee and has claimed and received them.

■ Beside the narrower question, which we have discussed but yet very much like it, is the question of novation upon which Taenzer & Co. v. Chicago, R. I. & P. R. Co. (C. C. A.) 170 F. 240, was ruled. The broad doctrine of this case is that when A and B are

under a contract with each other, which admittedly would not bind the successors of either, if C succeeds B and performs' his part of the contract receiving the benefits of the contract of A, C becomes bound to A as upon an implied contract between A and C of like tenor and effect as the old one, unless some policy of the law intervenes to declare the implied contract to be unenforceable. The obligation of C is in no real sense one imputed to him by law but a contract is implied or inferred to exist in fact. Any attempt of C to deny the contract would be met by a statement of the truth that he must have so agreed or otherwise he would not have done what he did.

The conclusion reached is that plaintiff has a right to judgment. Upon payment, however, the defendant succeeds to the ownership of the bonds in suit. Provision should thus be made that no execution can be enforced unless accompanied with a tender of a transfer of the bonds.

The parties have leave to enter a formal judgment in accordance with this opinion.