**IRMA HOSIERY COMPANY**

v.

**HOME INDEMNITY COMPANY,**
**Appellant.**

**No. 12949.**

United States Court of Appeals
Third Circuit.

Argued Nov. 19, 1959.

Decided March 29, 1960.

Joseph Head, Philadelphia, Pa. (Swartz, Campbell & Henry, Philadelphia, Pa., on the brief), for appellant.

Henry Temin, Philadelphia, Pa. (Elias Magil, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

This case was tried to the court. The facts as found by the trial judge were as follows.

For a number of years prior to November 1954, the Home Indemnity Company, the defendant-appellant, had issued policies to Irma Hosiery Co., the plaintiff-appellee, covering all of the latter's insurance requirements including burglary insurance. Irma procured its policies through R. D. Patterson, President of Preston-Patterson Co., Inc., a general agent for Home Indemnity. Irma's burglary insurance policies were issued for yearly periods and renewed on expiration without express direction from Irma by Home Indemnity.

During the insurance period with which we are concerned, viz., November 5, 1953–1954, Irma moved to a new location on the third floor of a building in Philadelphia. Later in the same insurance year Irma moved from the third floor of the building to the first floor without notifying Patterson or Home Indemnity of the change. On November 4, 1954, Patterson came to deliver renewal policies, including the burglary insurance policy, *sub judice*, for the year beginning November 5, and discovered that Irma had moved to the first floor of the building as stated. Patterson informed Irma that Home Indemnity would not insure Irma against burglary until certain changes were effected in the premises to increase security, and that after the changes were made the premises would have to be inspected by Home Indemnity and furthermore that if any changes were then suggested they would have to be made and thereafter reinspected by Home Indemnity before burglary insurance coverage would be extended to the new location. Notice to, and inspection by the insurer is for the purpose of giving to the insurer the opportunity to ascertain whether security repairs required by it have been made before it will assume the risk of coverage. Pat-

terson did not deliver the policy to Irma but returned it to Home Indemnity marked "Cancelled". At this point in time it is indubitable that Irma had no burglary coverage.

An inspection of the premises was made by Home Indemnity on November 10, 1954, and on November 23, the Company wrote a letter to Patterson detailing the work which Irma would have to complete if it was to be covered at the new first floor location by a burglary insurance policy issued by that company. The letter requested that the Patterson Company inform it when the necessary work had been completed. A self-addressed post card to be used for the purpose of the notification was included in Home Indemnity's letter. This post card itself pointed out that there was to be a "reinspection". The letter, however, said nothing about the necessity for inspection or reinspection before a burglary insurance policy would be issued. On December 10, 1954, Patterson mailed the letter and the post card to Leavitt, Irma's President, and in a covering letter instructed Leavitt to mail the card when the work had been completed. The letter ended with the statement, "Kindly let us know when these recommendations have been completed, in order that the Company may inspect and at that time, reinstate your Burglary Insurance." Irma commenced the alterations and finished them before December 2, 1954, but did not inform Home Indemnity of the completion of the alterations to the premises. Leavitt gave the filled-out post card to an employee who did not mail it until after the burglary referred to hereinafter.

During the night of December 12–13, 1954, Irma's establishment was burglarized and stock was stolen. On December 13, after the burglary, an inspector for Home Indemnity who previously had inspected Irma's premises and made recommendations respecting them, again visited Irma's place of business and examined the alterations that had been effected.[1]

---

1. On December 16, 1954, Irma and Home Indemnity entered into a "Non-Waiver

Agreement", plaintiff's Exhibit No. 4, pursuant to which the policy sued on,

214

Home Indemnity did not then, and never has, expressed approval of the alterations made by Irma. The court below found that the work complied with Home Indemnity's specifications. Home Indemnity, on December 13th, disclaimed liability and the suit at bar followed. The trial resulted in a judgment in Irma's favor.[2] The appeal followed.

Home Indemnity asserts that before the insurance coverage was to be extended to the new location Irma was obligated to give Home Indemnity notice of the completion of the required alterations so that the Company could determine whether the work had been completed according to specifications. Home Indemnity contends that since notice admittedly was not given to it or inspection made by it or the alterations approved by it prior to the burglary, no burglary insurance policy covered Irma at its first-floor location and that therefore Home Indemnity is not liable for the loss.

Irma contends that the course of conduct between it and Home Indemnity over the years established an implied contract that required Home Indemnity to continue the burglary insurance coverage if and when the required alterations were completed and that no express approval of the completed work was required by Home Indemnity prior to the burglary. This position cannot be sustained.

The findings of the trial court in respect to this contention were *inter alia,* as follows: "The only purpose for which the requirement of notice was inserted was that the defendant might be apprised of the performance of the condition before actually issuing the policy.", "It seems to me that the whole intent of the parties was that the plaintiff would be covered by an oral contract to insure when every physical change of the premises which the defendant deemed proper for its protection had been made.", "The sole purpose of the requirement for reinspection was that the defendant might

be sure that the work had been done.", and "Inasmuch as it had been done, it is not material that the mere step of notification and reinspection did not take place until after the loss." These findings are insufficient for the reasons set out hereinafter to sustain the conclusion of law reached by the court below that Home Indemnity is liable.

■ Jurisdiction is based on diversity and the law of Pennsylvania applies. Under the law of Pennsylvania, as under that of the other States, there must be a meeting of the minds of the parties and an intent to enter into a contract before a court can find an existing contractual obligation. Benner v. Fire Association of Philadelphia, 1910, 229 Pa. 75, 78 A. 44. The operative facts, taken most favorably to Irma, require the conclusion that as a matter of law Home Indemnity made an offer of a unilateral contract to Irma, i. e., to insure Irma against burglary when the security repairs of the premises had been completed in accordance with Home Indemnity Company's specifications and Irma had notified Home Indemnity of that completion in order that the alterations could be reinspected by Home Indemnity and approved by it. It was a prime condition of the unilateral contract that the work was to be inspected, and if necessary reinspected, and was to meet with Home Indemnity's approval before Irma at its first-floor location was to be covered by insurance issued by Home Indemnity and it is not an adequate answer for Irma to assert that the work had been completed by Irma in accordance with Home Indemnity's specifications and that therefore liability attached. Such a result requires a re-making by the court of the unilateral contract offered by Home Indemnity. The trial judge found that Home Indemnity could not have refused "unreasonably to express its satisfaction" but this is irrelevant in view of the terms of the offer of the contract for the

No. BO-72-75201, was finally issued. The parties reserved all their rights as they existed on December 16, 1954, in respect to the burglary.

2. The court below made findings of fact and conclusions of law in the form of an opinion but did not report an opinion for publication.

right to reinspect and the right to approve were retained by Home Indemnity before it extended burglary coverage. Home Indemnity never had the opportunity to exercise these rights. Until it did so it incurred no liability.

The judgment will be reversed and the case will be remanded with the direction to enter judgment in favor of Home Indemnity.