## Fenestra Incorporated, Appellant, *v.* John McShain, Inc.

Argued November 21, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph J. Brown,* with him *Ralph S. Croskey,* and *Brown, Brown & Wieland,* for appellant.

Harold E. Kohn, with him David Pittinsky, Vincent P. McDevitt, and Dilworth, Paxson, Kalish, Kohn & Levy, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 15, 1969:

This is an appeal from the judgment entered after a verdict in the Court of Common Pleas No. 5 of Philadelphia County. Appellant, Fenestra, Incorporated (Fenestra) brought an action in assumpsit seeking recovery of $19,414.72, the balance of the purchase price due for windows in a building constructed by appellee, John McShain, Inc. (McShain). Appellee admitted the allegations of the complaint, but counterclaimed for the sum of $32,023.19. This counterclaim was based on an alleged contract between appellant and appellee's assignor, John McShain, Inc., of Maryland (McShain of Maryland) whereby appellant, as a subcontractor, was to furnish and install metal windows in the Calverton Junior High School, Baltimore, Maryland. Fenestra claimed that it never entered into the contract involved in the counterclaim. The court below, sitting without a jury, held in an order dated March 4, 1968, that the parties had indeed entered into a contract, and found for McShain on the counterclaim. The difference between the claim and the counterclaim, both with interest, amounted to a verdict in favor of McShain in the sum of $18,637.20. After exceptions were dismissed by the court en banc, judgment was entered and this appeal followed.

It is undisputed that the parties never signed a written agreement. McShain, however, relies on an oral agreement of July 25, 1960 as creating the contract. Fenestra contends that this was merely a preliminary agreement limited to the subcontract price of $78,400, it being intended by the parties that the preliminary agreement should be confirmed by a written

contract specifying all the terms and conditions. The court below found that the intention of the parties was to be bound by the oral contract of July 25, 1960. It is hornbook law that the findings of a chancellor or a court sitting without a jury, if affirmed by a court en banc, have the force of a jury verdict and will not be overturned, absent an error of law, if there is evidence to support them.

Surely the evidence supports the findings of the court. It is well settled that the actions of the parties pursuant to the contract are significant and substantial evidence of their intention. Fenestra urges that we consider conclusive the fact that on July 29, 1960, four days after the date of the alleged oral contract, Fenestra submitted upon its printed proposal form a list of terms and conditions upon which it proposed to furnish the windows in controversy; that the July 29th proposals were not signed by McShain; that McShain on August 18, 1960 submitted to Fenestra and Metal Construction Services Corporation[1] its printed purchase orders, with some terms differing from those set forth in Fenestra's proposals of July 29th, which purchase orders were never signed either.

However, this exchange of written contracts is in itself inconclusive as to whether the parties intended to be bound by the oral contract. McShain's representative at the July 25th meeting testified that the July 25th meeting was a culmination of negotiations, that it was understood that the terms and specifications of the main contract were applicable to this subcontract, and that McShain's purchase orders were to be merely "a record of the transaction", a "writing con-

---

[1] A day or two subsequent to the July 25th conference, Fenestra's agent asked that the contract be split into two parts, one part for Fenestra and the other for Metal Construction Services Corporation.

firming the verbal transaction." The testimony in itself would have been enough to support the verdict.

McShain also produced evidence that on October 3, 1960, appellee received from appellant a sample window, and that the custom in the trade was that a sample was supplied only after a contract existed, since it is costly to make a sample. Further, appellee introduced the deposition of one E. G. Gebhardt, sales manager of the William Bayley Company. Gebhardt testified that between October 10, 1960 and October 27, 1960, at the request of appellant, Gebhardt attended a series of meetings with appellant's officials, who had decided to go out of the window business, in order to discuss "work which they were interested in having Bayley perform for them so that they could clear their shop of all work by the end of 1960." He testified that "Fenestra was interested in having the William Bayley Company take over certain of their *obligations*, fabricate the materials and ship it as a *subcontractor* to Detroit [appellant's principal place of business]." (Emphasis added). Appellant asked Bayley to take over eighteen jobs. At the final meeting, some time between October 25th and October 27th, Bayley agreed to take seventeen, but refused to take the Calverton job in dispute here because the price was unacceptable.

The court below stated our sentiments when it said: "It would be difficult to conclude that Fenestra was attempting to obtain a subcontractor to furnish materials for a job it did not have. The conduct of the parties and all of the surrounding circumstances clearly establish that plaintiff thought it had a contract, acted like it had a contract and then failed to perform."

Appellant also complains that the damages awarded appellee were not attributable to appellant's nonperformance. The court below disagreed, and so do

we. Appellee introduced ample evidence to prove that its damages were proximately caused by appellant's breach.

The judgment is affirmed.