In re PACKER AVENUE ASSOCIATES, Bankrupt.

Paul P. GIORDANO, Trustee, Plaintiff,

v.

Jay JOHNSTONE, Defendant.

Bankruptcy No. 77–1201WK.

United States Bankruptcy Court, E. D. Pennsylvania.

Nov. 8, 1979.

Timothy J. Gorbey, Chester, Pa., for Bankrupt.

Alan S. Fellheimer, Vito F. Canuso, Jr., Richard Max Bockol, Philadelphia, Pa., for Trustee.

Benjamin F. Levy, Philadelphia, Pa., for Jay Johnstone, defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the Court is an adversary proceeding brought pursuant to Rule 701(1) of the Rules of Bankruptcy Procedure. Trustee for the Bankrupt's Estate seeks payment for goods and services rendered by the Bankrupt, Packer Avenue Associates, to the Defendant, Jay Johnstone.

On July 25, 1977, The Packer Avenue Associates in accordance with Bankruptcy Rule 12–6, filed a Petition for a Real Property Arrangement Under Chapter XII of the Bankruptcy Act. Subsequently, on October 21, 1977, the Packer Avenue Associates were adjudicated bankrupt by this Court.

On May 1, 1978, the Trustee for The Packer Avenue Associates instituted this adversary proceeding seeking the payment for goods and services in the amount of $5,598.35 rendered by the bankrupt's hotel, The Philadelphia Hilton Hotel, to the Defendant, Jay Johnstone (hereinafter referred to as "Johnstone") while he was lodged at the hotel during the 1977 baseball season.[1] On June 6, 1978, Johnstone filed an answer and counterclaim, alleging that he had entered into an oral employment contract with Armand Ceritano, ("Ceritano") on behalf of The Philadelphia Hilton Hotel ("Hotel"). Under the alleged employment contract which was to run throughout the 1977 professional baseball season, Johnstone would perform public relation functions for the Hotel in exchange for a $200.00 per week salary plus free room

and board at the Hotel. A hearing was held on this matter, and it was concluded that Johnstone performed all of his obligations under the alleged contract, including the making of taped television commercials promoting the Hotel, video tape interviews for use within the Hotel, mingling with the guests of the Hotel generally, and attempting to obtain other sports teams to use the Hotel when in Philadelphia as well as other general public relation functions. It was further determined at the hearing that Johnstone has not been paid any part of his salary under the alleged employment contract in question. Johnstone asked for relief in the form of a judgment in the amount of his unpaid salary under the alleged contract and a determination that the claim of the Trustee for the Bankrupt's Estate for goods and services was not valid.

*ISSUES PRESENTED:*

It is not disputed by the parties that Johnstone received the aforementioned goods and services without payment. Therefore, the following three (3) issues must be decided by this Court.[2]

(1) Whether there was a valid employment contract between Johnstone and Ceritano, and if so, what were the terms thereof?

(2) Whether Ceritano had the authority, either real or apparent, as the principal owner or as agent, for the Hotel, to bind it to employment contracts which he entered into on its behalf?

(3) If a valid employment contract binding the Hotel was entered into by Johnstone and Ceritano, was the contract accepted or rejected by the Trustee under the Chapter XII Real Property Arrangement Proceeding?

## DISCUSSION

A contract had been defined as a promise enforceable at law directly or indirectly. It imports a legally enforceable ob-

---

1. Plaintiff, Complaint for non-payment of services and goods, Exhibit A.

2. Plaintiff, Complaint for Non-Payment of service and goods, Count I paragraph 4, and Defendant's Answer and Counterclaim, paragraph 4.

ligation directly assumed by or imposed on the contractor, to do something. *Corbin on Contracts,* § 3 (1961). *Zanes v. Lehigh Valley Transit Company,* 41 F.2d 552 (E.D.Pa. 1930), aff'd. 46 F.2d 848 (3rd Cir. 1931), cert. denied 284 U.S. 619, 52 S.Ct. 8, 76 L.Ed. 528 (1931). There are certain requisites in order for a contract to be enforceable at law. The parties to the contract must clearly express their intention to enter into such an agreement. *Irma Hosiery Company v. House Indemnity Company,* 276 F.2d 212 (3rd Cir. 1960), *Fenestra, Incorporated v. John McShain, Incorporated,* 433 Pa. 137, 248 A.2d 835 (1969). There must also be a communicated offer and an unconditional acceptance by the parties of the terms contained in the offer. *Fahringer v. Strine's Estate,* 420 Pa. 48, 216 A.2d 82 (1966). *Hedden v. Lupinsky,* 405 Pa. 609, 176 A.2d 406 (1960), *Matter of ABC—Federal Oil and Burner Company,* 182 F.Supp. 928 (E.D.Pa. 1960), aff'd. 290 F.2d 886 (3rd Cir. 1961). Finally, valid consideration must be given by both parties, either by an act, or forbearance or a return promise which is bargained for and given in exchange for that promise. *Thomas v. R. J. Reynolds Tobacco Company,* 350 Pa. 262, 28 A.2d 61 (1944). A promise unsupported by consideration is nudum pactum and unenforceable at law. *Stelmack v. Glen Alden Coal Company,* 339 Pa. 410, 14 A.2d 127 (1940).

▉ In the present Case, the testimony is clear and uncontroverted that Johnstone entered into a binding agreement with Ceritano during February of 1977. Johnstone and Ceritano expressly agreed that Johnstone would perform public relation duties for the Hotel in exchange for a salary of $200.00 per week and free room and board there.[3] The agreement was oral and was not reduced to writing. However, under Pennsylvania law, a definite oral contract is effective when the offer is orally accepted. The terms of the agreement are to be construed from the words and conduct of the parties. *Main Line Theatres, Inc. v. Para-mount Film Distributing Corp.,* 189 F.Supp. 314 (E.D.Pa.1960), aff'd. 298 F.2d 801 (1962) cert. denied 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). However, even if the testimony did not disclose an express contract between Ceritano and Johnstone, an implied contract would have been formed. An implied contract results from the conduct of the parties where the conduct occurs under circumstances which according to the ordinary course of dealing and common understanding of men, show that there was a mutual intention to enter into a contract. *Westinghouse Electric Company v. Murphy,* 425 Pa. 166, 228 A.2d 656 (1967); *Thomas v. R. J. Reynolds Tobacco Company,* supra; *Reitmeyer v. Coxe Brothers and Company, Inc.,* 264 Pa. 372, 107 A. 739 (1919).

The conduct of Johnstone in performing general public relations at the Hotel and the absence of any billing for these services when coupled with the fact that Johnstone was accorded free room and board without being billed, forces this Court to conclude that a valid contract existed between the parties.

Having determined that a valid contract was entered into by Johnstone and Ceritano, the next question to be resolved is whether Ceritano had the authority to enter into employment contracts on behalf of the Hotel either as an owner or agent.

Ceritano was a stockholder in one of the corporations that formed the partnership that held title to the Hotel and thus, had an ownership interest. He held no official position in the management structure of the Hotel. If Ceritano was a principal owner of the Hotel, he would have had the authority to bind the Hotel to employment contracts he entered into for the provision of services at the Hotel. However, even if Ceritano did not have the authority to bind the Hotel as its principal owner, he might be considered an agent for the owner of the Hotel. Ceritano maintained an office at the Philadelphia Hilton and, in effect, operated the

---

3. Testimony of James D. McCarthy, Vice President of WPHL T.V. Channel 17, hearing September 27, 1978, at pages 47–48.

Hotel. He gave orders to the employees of the Hotel who followed them. Indeed, the testimony of the Hotel's Controller, Robert D. Villecco, indicated that everyone in the Hotel took their orders from Ceritano and considered him their boss.[4]

In essence, Ceritano had actual control over the management of the Philadelphia Hilton and was acknowledged as such by the employees of the Hotel. Further, testimony revealed that Ceritano had bound the Hotel to other contracts, including a contract well in excess of $250,000.00 for a television advertising campaign.[5]

■ Agency is the relationship which results from the manifestation of consent by one person to another that the other person shall act on his behalf and be subject to his control, and consent by the other party to so act. *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970), *Chalupiak v. Stahlman*, 368 Pa. 83, 81 A.2d 577 (1951). The liability of a principal to third parties for the act of an agent must rest on one of the following:

1) express authority, or that which is directly granted;

2) implied authority to do all that is proper, usual and necessary to the exercise of the authority actually granted;

3) apparent authority, as where the principal hold one out as agent by words or conduct; and

4) agency by estoppel.
   *Reifsnyder et al. v. Dougherty*, 301 Pa. 328, 152 A. 98 (1930), *Hartley v. United Mine Workers of America, Rubena Local Union No. 6321*, 381 Pa. 430, 113 A.2d 239 (1955).

■ In the present Case, there is no agency based on express authority for Ceritano to act on behalf of any principal. Apparent authority is defined as that authority which is not actually granted by the principal to the agent, but which the principal either

1) knowingly permits the agent to exercise; or

2) holds him out as possessing.
   *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968); *Jennings v. Pittsburg Mercantile Company*, 414 Pa. 641, 202 A.2d 51 (1964).

The test for apparent authority in Pennsylvania has been defined by the Pennsylvania Supreme Court as follows:

If the principal puts one into, or knowingly permits him to occupy a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known. *Blair v. J. R. Andrews, Inc. of Delaware*, 141 F.Supp. 51 (W.D.Pa.1956), *East Girard Savings and Loan Association v. Houlihan*, 373 Pa. 578, 97 A.2d 23 (1953).

■ Therefore, under Pennsylvania law, as between principals and third parties, mutual rights and liabilities are not limited by the agents express or implied authority, but are governed by the "apparent scope" of the agent's authority, which is that authority the principal holds the agent out as possessing or permits the agent to exercise. The principal is estopped to deny this apparent authority. Accordingly, a principal who has invested an agent with apparent authority is bound and liable to all third parties who, in good faith, justifiably rely under the circumstances on the apparent authority of the agent. *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781 (3rd Cir. 1978). *William B. Tanner Company, Inc. v. WIOO, Inc.*, 528 F.2d 262 (3rd Cir. 1975), *Gizzi v. Texaco, Inc.*, 437 F.2d 308 (3rd Cir. 1971).

■ The facts disclose that the principal (assuming Ceritano was not the chief owner

---

4. Testimony of Robert D. Villecco, Controller of the Stadium Hilton Inn (Philadelphia Hilton Inn), hearing September 27, 1978, at pages 140–146.

5. Testimony of James D. McCarthy, Vice President of WPHL T.V. Channel 17, hearing September 27, 1978, at pages 47, 63–64.

of the Hotel) permitted Ceritano to occupy the position of owner or managing officer. He was the person who gave the employees their orders, including the controller of the Hotel. Ceritano, on behalf of the Hotel, also entered into television contracts binding the Hotel to advertising obligations. In addition, the name of the Hotel was the Ceritano-Hilton. This Court concludes, based on these facts, that anyone dealing with Ceritano under the circumstances, could justifiably rely on the fact that Ceritano had the authority to enter into contracts on behalf of the Philadelphia Hilton or the Ceritano-Hilton.

However, even if Ceritano was not a principal owner of the Hotel or did not have the apparent authority to enter into contracts on behalf of the Hotel, the owners of the Hotel ratified the unauthorized conduct of Ceritano in entering into an employment contract with Johnstone on behalf of the Hotel.

Ratification results when a principal affirms a previous unauthorized act by his agent. The effect of ratification is to give the principal's agent the authority to perform the unauthorized act as of the time the agent performed the unauthorized act. *Oliver v. City of Clairton*, 374 Pa. 333, 98 A.2d 47 (1953). In essence, ratification by a principal of his agent's unauthorized act is equivalent to the agent having that particular authority from the beginning. The affirmance by the principal of his agent's unauthorized act may be express or implied from the conduct of the principal. *Bell v. Scranton Trust Company*, 282 Pa. 562, 128 A. 494 (1925). Affirmance of an unauthorized transaction by the agent may also be inferred from the principal's failure to repudiate it once it comes to his knowledge. *Savidge v. Metropolitan Life Insurance Company*, 380 Pa. 208, 110 A.2d 730 (1955). Additionally, it is clear that a principal cannot repudiate the unauthorized conduct of his agent while at the same time retaining the benefits of his agent's unauthorized act. Indeed, the acceptance of the benefits of the unauthorized acts of an agent by his principal confirms the authority of the agent to perform the unauthorized act and estops the principal from denying liability for the attendant obligations arising thereunder. *Neel v. Crittenden*, 353 Pa. 201, 44 A.2d 558 (1945), *Miller v. Belmont Packing and Rubber Company*, 268 Pa. 51, 110 A. 802 (1920).

Here, the alleged unauthorized act of the agent in question is Ceritano's entering into an employment contract with Johnstone, binding the Hotel. The principal in the Case (assuming Ceritano is not the chief owner of the Hotel) is the chief owner of the Hotel or managing officer who has allowed Ceritano to de facto operate the Hotel. The principal must have known of Ceritano's de facto management of the Hotel by, either Ceritano's name on the Hotel or the continuous presence of Ceritano in an ostensible management capacity at the Hotel. Consequently, the principal was put on notice that Ceritano was acting on behalf of the Hotel and possibly entering into contracts binding the Hilton thereto. Therefore, we find that the principal's inaction in repudiating Ceritano's act of entering into the employment contract with Johnstone, which bound the Philadelphia Hilton, constituted a ratification of Johnstone's contract.

The Trustee for the Packer Avenue Associates, owners of The Philadelphia Hilton, was appointed by this Court on July 25, 1977. The Trustee also had, or should have had, knowledge of a meeting with Johnstone on August 25, 1977, at which time Johnstone confirmed his oral arrangement with the Hotel. However, the Trustee took no action to either accept or reject the contract. Instead, with the implied or actual knowledge of the Trustee, Johnstone continued to perform his public relation functions for the Hotel until the end of the 1977 baseball season. Further, the Trustee did not give or cause to be given, a bill to Johnstone for the hotel services Johnstone had used. The Hotel continued to accept the benefits of Johnstone's services until October 1977, without making any salary payment as required under the contract. Based on these facts, this Court is forced to

conclude that the Trustee received constructive notice of the Johnstone executory contract through his observation of Johnstone's activity in the Hotel in meeting hotel patrons before and after Phillies' baseball games and other large outstanding hotel services bills. It should also be noted that although the Trustee was under an obligation to be informed of prior executory contracts, this entire problem may have been averted had the Debtor filed or included a statement of executory contracts in his Chapter XII Petition as required by § 424, 11 U.S.C. § 824.

The Trustee contended that Ceritano committed an unauthorized act by entering into an employment contract on behalf of the Hotel with Johnstone. However, after the Johnstone contract came to the attention of the Trustee, instead of repudiating Ceritano's authority to enter into contracts on behalf of the Hotel, the Trustee allowed Johnstone to continue to perform his obligations under the contract, thereby accepting the benefits of the alleged unauthorized act of Ceritano. Therefore, the Trustee's failure to repudiate the Johnstone contract after he received knowledge of it and his continued acceptance of the benefits thereunder, constituted ratification of the Johnstone contract by the Trustee for the Packer Avenue Association.

Having found a binding contract entered into by Johnstone and Ceritano on behalf of the Hotel, either as the owner, as an agent of the Hotel with the apparent authority to enter into contracts on behalf of the Hotel, or by subsequent ratification of the contract by the Trustee of the Hotel, the final issue to be resolved is whether the Trustee, pursuant to the Bankruptcy Act, rejected the aforementioned executory contract.

Under Chapter XII of the Bankruptcy Act, executory contracts can be rejected by the trustee for the debtor. There are two (2) methods authorized by the Bankruptcy Act by which the trustee for the debtor can reject executory contracts.

One method of rejecting executory contracts is provided under § 461(4), 11 U.S.C. § 861, of the Bankruptcy Act. Under this Section, the debtor's plan of arrangement may provide for the rejection of specified executory contracts. As no plan of arrangement was submitted by the Trustee for the Debtor in this Case, § 461(4) is not applicable here.

The other method of rejecting executory contracts is provided by § 413(1), 11 U.S.C. § 813 of the Bankruptcy Act. Under this Section, Bankruptcy Courts may permit the rejection of specified executory contracts of the debtor upon "notice to the parties to such contract and to such other parties in interest as the court may designate".[6] Rule 12–52 of the Rules of Bankruptcy Procedure implements this Section and states that the application for the rejection of executory contracts must be brought before the court for hearing on notice by motion. Subsequently, "the court shall set a hearing on notice to the parties to the contract and to such other persons as the court may direct.[7]

The granting of permission under § 413(1) of the Bankruptcy Act to reject specified executory contracts is within the discretion of the Court.

Counsel for defendant erroneously stated in his Brief that the standard to be applied under § 413(1) is that of § 70(b), 11 U.S.C. § 110, of the Bankruptcy Act. Under § 70(b) and Bankruptcy Rule 607, the trustee must assume or reject executory contracts within sixty (60) days after adjudication or within thirty (30) days after his qualification, whichever is later. The Section further provides that any executory contract not assumed or rejected within the specified time limit shall be deemed rejected. This part of § 70(b) has been found inconsistent with the purpose of Chapter XII, as well as Chapter X, XI and XIII which contain substantially identical provisions for rejection of executory contracts. Therefore, the aforementioned part of

---

6. Rule of Bankruptcy Procedure, 12–52.

7. Section 413(1) of the Bankruptcy Act (11 U.S.C. § 813).

**294**

§ 70(b) has been found inapplicable to Chapter XII proceedings. *In Re Yorktown Associates,* 18 C.B.C. 152 (S.D.N.Y.1978). As was stated in *Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir. 1966):

"[These provisions] clearly indicate Congress intended that before an executory contract · should be rejected, a judicial hearing and inquiry at which interested parties might be heard, should be held, and that an executory contract could be rejected only with permission of the court . . ."

As no time limitations are provided for in the structure of Chapter XII, executory contracts remain in effect and the parties are bound thereunder until the specified executory contracts are affirmatively rejected by the means of rejection provided in Chapter XII, either § 413(1) or § 461(4).

Consequently, while the failure to affirmatively assume an executory contract does not automatically result in its rejection, the failure of a Chapter XII trustee to commence proceedings under § 413(1) or § 461(4) to reject specified executory contracts constitutes adoption of the executory contracts and acceptance of the liability for the performance thereunder. Executory contracts in Chapter XII proceedings remain binding unless rejected pursuant to § 413(1) or § 461(4). *In Re Yorktown Associates,* supra.

In the Case at bar, the contract was clearly executory and I am forced to conclude that the failure of the Trustee to move for the rejection of the Johnstone executory contract pursuant to Rule 12–52 and § 461(4), resulted in the adoption of the contract. Johnstone's contract ran from the beginning of March 1977 to October 15, 1977.[8] This constitutes thirty-four (34) weeks at a weekly salary of $200.00. Accordingly, the Philadelphia Hilton Hotel has an outstanding obligation to Johnstone in the amount of $6,800.00. However, the status of Johnstone's claim must be deter-

mined in accordance with § 64 of the Bankruptcy Act (11 U.S.C. § 104) which states in part:

"advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . ."

The United States Supreme Court in *Reading Company v. Brown,* 391 U.S. 471, 483, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), interpreted the actual and necessary costs of § 64(a)(1) to include "costs ordinarily incident to operation of a business and not be limited to costs without which rehabilitation would be impossible . . ." Applying the principles of *Reading Company,* this Court finds that Johnstone's contract claim is one which should be given first priority under the Bankruptcy Act. Since § 64 is applicable only to expenses of administration incurred after the filing of the Chapter XII, only that portion of Johnstone's contract from July 25, 1977 to October 15, 1977, can be considered as an administrative claim. Accordingly, under § 64(a)(1), $2,400.00 (twelve (12) weeks at $200.00 per week) of Johnstone's claim against the Packer Avenue Associates is a first priority claim. The remainder of Johnstone's claim, $4,400.00, constitutes a general unsecured claim.

Section 64(a)(2) requires three (3) elements to be present in order to have specified wages constitute priority claims: 1) they must have been due and earned within three (3) months of the commencement of the proceeding, 2) the claim for them may not exceed $600.00 in amount, and 3) they must have been earned by workmen, servants, clerks or traveling or city salesmen. *In Re Chitwood,* 14 C.B.C. 693 (S.D.Ala.1977).

Congress enacted § 64(a)(2) in order to categorize certain types of wages as priori-

---

**8.** Testimony of Jay Johnstone, professional baseball player for the Philadelphia Phillies, hearing September 27, 1978, at pages 79, 80, 100.

ty claims. It was the intent of Congress to benefit the class of wage earners who are likely to be solely dependent for their livelihood on the wages received from their employer, who occupy menial positions of low income, who must accept a job as it comes and who have no substantial savings to fall back on in case of adversity and therefore cannot afford to lose their wages. *In re North Atlantic and Gulf Steamship Co.*, 192 F.Supp. 107 (S.D.N.Y.1961); *In re Paradise Catering Corporation*, 36 F.Supp. 974 (S.D. N.Y.1941). Consequently, Congress gave this class of workers a priority in bankruptcy as to their wages, due to the fact that they, as a class, could ill afford to be classified as general creditors. Johnstone is clearly not within this category. Johnstone is not solely dependent on his wages from the Hotel, did not have to accept this job, nor was the job menial and low paying. Therefore, we find that § 64(a)(2) of the Bankruptcy Act is not applicable to the present Case.

Section 64(a)(1) of the Bankruptcy Act (11 U.S.C. § 104) was amended by Congress in 1952. Congress added the provision that where bankruptcy follows a debtor relief proceeding and the fund for distribution is not sufficient to pay the administrative costs and expenses of both the debtor relief proceeding and the bankruptcy proceeding, the costs and expenses of administration of the bankruptcy proceeding shall have priority over the superseded debtor-relief proceeding. Therefore, if the fund for distribution in this case is insufficient to pay the administration costs and expenses of both the Chapter XII proceeding and the bankruptcy proceeding, the bankruptcy proceeding's administration costs and expenses shall have priority over the Chapter XII administration costs and expenses, including Johnstone's Chapter XII administrative claim of $2,400.00.

## CONCLUSION

This Court finds that Johnstone has a valid contract claim in the amount of $6,800.00 against the Estate of Packer Avenue Associates. This sum includes an ad-

ministrative claim in the amount of $2,400.00 against the Packer Avenue Associates which has a first priority subject to the priority of the costs and expenses of the subsequent bankruptcy proceeding, if the distribution fund is not sufficient to pay the administration costs and expenses of both, the superseded Chapter XII proceeding and subsequent bankruptcy proceeding. Johnstone also has a general unsecured claim against the Packer Avenue Associates in the amount of $4,400,00.